GEORGE HUNT, Attorney General, *et al.*

*v.*

VIMERIA FOWLER *et al.*

*Filed at Ottawa June 17, 1887.*

1.  WILL—*charitable bequest—certainty required as to the objects of the bounty—trustee, how to be appointed.*  A testatrix, after making various specific devises and bequests, directed that all the residue of her estate, including that which might lapse for any cause, be invested or loaned, upon the best terms to produce the largest income, and that such income be distributed, annually, "among the worthy poor of the city of LaSalle, in such manner as a court of chancery may direct:"  *Held,* that the residuary bequest was a valid charitable gift, and should be carried into effect by a court of chancery.

2.  In the case of a charitable bequest, it is immaterial how vague, indefinite and uncertain the objects of the testator's bounty may be, provided there is a discretionary power vested in some one over its application to those objects. Nor will such a bequest fail for want of a trustee.  The court will appoint one, when necessary.

3.  The power conferred by the will upon the trustees to be appointed by the court of chancery to distribute the income or charity, carries with it the incidental power to select the individuals to whom the distribution shall be made.  The trustees appointed by the court will have the same power to select the recipients of the testatrix' bounty as if appointed by her to distribute it.

4.  Charitable bequests of a public nature are favorably and liberally construed, to effectuate the intentions of the donor.

APPEAL from the Circuit Court of La Salle county; the Hon. DORRANCE DIBELL, Judge, presiding.

Mr. GEORGE HUNT, Attorney General, for the appellants:

An imperfect description of the donee will not render the gift void, unless it is impossible to ascertain who is the object of the intended bounty.  *Congregational Society* v. *Hatch,* 48 N. H. 394; *Smith* v. *Smith,* 4 Paige, 271.

A devise to "the poor" was sustained in *Attorney General* v. *Rance,* Ambl. 422, and *Legge* v. *Asgill,* Turn. & Russ. 265. Also, a devise to the poor inhabitants of S., forever, in *Attorney General* v. *Clarke,* 1 Ambl. 422.  So, a devise to the "poor

pious persons, male and female, old or infirm, as the executors see fit, not omitting large and sick families, if of good character." *Nash* v. *Morley*, 5 Beav. 177.

The courts are liberal in the construction of charitable bequests, to give effect to the intention of the testator. *Burr* v. *Smith*, 7 Vt. 241; *Button* v. *Tract Society*, 23 id. 336; *McAllister* v. *Hein*, 46 id. 272; *Clement* v. *Hyde*, 50 id. 716; *Dodge* v. *Williams*, 46 Wis. 70.

A devise to A and B, directing them to expend it "in the purchase and distribution of such religious books or reading as they shall deem best, and as fast as the funds shall come into their hands," was held valid, in *Simpson* v. *Welcome*, 72 Me. 496.

It is immaterial how vague, indefinite and uncertain the objects of the bounty may be, provided there is a discretionary power vested in some one, over its application to those objects. *Missionary Society's Appeal*, 30 Pa. St. 425.

When the founder of a public charity does not provide a rule or order of selection of beneficiaries, there is a necessary power of selecting, in the trustee. *Dodge* v. *Williams*, 46 Wis. 70; *In re Taylor Orphan Asylum*, 36 id. 534; Perry on Trusts, sec. 732.

An estate devised to such person as the executor shall name, and no executor is appointed, the devise becomes a nullity. Yet such devise, if expressed to be for a charity, would be good, and the court of chancery would execute it. 2 Story's Eq. Jur. sec. 1166.

Where a charity is so given that there can be no objects, the court will order a new scheme to execute it. 2 Story, sec. 1170 a.

Charitable bequests are not void on account of any uncertainty as to the persons or as to the objects to which they are to be applied. 2 Story, sec. 1181.

A charity, in a legal sense, may be more fully defined as a gift to be applied (consistently with existing laws) for the

benefit of an indefinite number of persons. *Jackson* v. *Phillips*, 14 Allen, 556.

It is the number and indefiniteness of the objects which is the essential element of a charity. *Salstonal* v. *Sanders*, 11 Allen, 456.

A charitable use is essentially shifting. When a trust defines the beneficiaries with certainty, it is rather private than public. Charity begins where uncertainty begins. Perry on Trusts, sec. 687; *Fontain* v. *Ravenal*, 17 How. 369.

Gifts have been sustained "for promoting charitable purposes." (*Waldo* v. *Caley*, 16 Ves. 206.) "To buy bibles, and to be divided among poor pious persons." (*Attorney General* v. *Stepney*, 10 Ves. 22.) "To be used in the education and tuition of worthy indigent females." (*Dodge* v. *Williams*, 46 Wis. 70.) So, a gift to the poor members of the Friend's Society. (*Magill* v. *Brown*, Bright, 347.) So, a devise "for the relief of indigent widows and orphans in the city of S." (*Jones* v. *Habershaw*, 107 U. S. 174.) A bequest of money "to the poor of Madison county," the interest only to be used, held valid. *Heuser* v. *Harris*, 42 Ill. 425; *Prickett* v. *People*, 88 id. 115.

Messrs. MAYO & WIDMER, for others of the appellants:

As to the intention to revoke a disposition of a will by a codicil, and the presumption, see *Earl of Rochester*, 7 Ves. 348; *Alexander* v. *Kirkpatrick*, 2 Sc. & D., A. H. L. Lav. 397; *In re Fleetwood* v. *Brewer*, 15 L. R. (Ch. Div.) 594; *Brant* v. *Wilson*, 8 Cow. 56; *Laughton* v. *Atkins*, 1 Pick. 535; *Barksdale* v. *Barksdale*, 12 Leigh, 535.

Where the purpose to revoke is not a distinct, independent intention, but is subservient to the purpose of making a new disposition of the property, the testator meaning to do the one only so far as he succeeds in effecting the other, then the prior disposition is not revoked if the second disposition fails, from the infirmity of the instrument, to be effected; and when, as here, the prior disposition is not expressly revoked, and

the testator, in both his will and codicil, has clearly manifested his intention not to leave any of his property intestate, the presumption is, that he preferred the beneficiary, by the will, to the heir, and, therefore, that beneficiary shall lose nothing, if the intended beneficiary, by the codicil, can take nothing. *Onions* v. *Tyrer*, 1 P. Wms. 342; *Eggleston* v. *Speke*, 3 Mod. 259; *Ex parte Earl of Rochester, supra; Limbery* v. *Mason*, 2 Comyn, 451; *Quinn* v. *Butler*, 6 Eq. Cases, *225; *Laughton* v. *Atkins*, 1 Pick. 535; *Barksdale* v. *Barksdale*, 12 Leigh, 535; *Rudy* v. *Ulrich*, 69 Pa. St. 177; *Pringle* v. *McPherson*, 2 Beav. 713; *Probate of will of Penniman*, 20 Minn. 245; *Wolf* v. *Bolinger*, 62 Ill. 368; *Alexander* v. *Kirkpatrick, supra; Kane* v. *Astor's Exrs.* 5 Sandf. 467.

It is an established rule not to disturb the dispositions of a will further than is absolutely necessary to give effect to the codicil. 1 Jarman on Wills, 343; *Rogers* v. *Rogers*, 6 Heisk. 489; *Holden* v. *Blaney*, 119 Mass. 424; *Kane* v. *Astor's Executors*, 5 Sandf. 467; *Brant* v. *Wilson*, 8 Cow. 56; *Collier* v. *Collier*, 3 Ohio St. 372; *Wescott* v. *Cady*, 5 Johns. Ch. 343; *Ives* v. *Harris*, 7 R. I. 413; *Murch* v. *Marchant*, 6 Mann. & Gr. 813.

Messrs. DUNCAN, O'CONNOR & GILBERT, for the appellees:

The residuary clause of the codicil is void for uncertainty as to the beneficiaries. Perry on Trusts, sec. 729.

The term, "the worthy poor of the city of La Salle," is too uncertain and indefinite to enable the courts to ascertain who are the beneficiaries intended. Perry on Trusts, sec. 698; *White* v. *Fisk*, 22 Conn. 21; *Bridges* v. *Pleasants*, 4 Ired. Eq. 26; *Grimes* v. *Harmon*, 35 Ind. 198; *Heiss* v. *Murphy*, 40 Wis. 276; *Buckman* v. *Bonsor*, 23 N. Y. 298; *Dashiel* v. *Attorney General*, 5 H. &. J. 392; *Urmey* v. *Wooden*, 1 Ohio St. 160; *Owens* v. *Missionary Society*, 14 N. Y. 380.

To enable the courts to carry into effect a charity of this character, it is necessary for the testator to appoint trustees,

and vest them with discretion to select the beneficiaries. Perry on Trusts, sec. 719; *Treat's Appeal,* 30 Conn. 113; *Fairfield* v. *Lawson,* 50 id. 501; *Coit* v. *Comstock,* 51 id. 352; *Goodell* v. *Union Association,* 29 N. J. Eq. 32; *DeCamp* v. *Dobbins,* 29 id. 26; *Hisketh* v. *Murphy,* 36 id. 304; *Erskine* v. *Whitehead,* 84 Ind. 387; *Miller* v. *Teachout,* 24 Ohio St. 525; *Sowers* v. *Cyrenius,* 39 id. 29; *Simpson* v. *Welcome,* 72 Me. 496.

The direction that the funds shall be distributed "in such manner as a court of chancery may direct," does not cure the defect arising from the failure to appoint trustees. *Brown* v. *Yeall,* 7 Ves. 50.

The uncertainty of the bequest can not be cured by the application of the doctrine of *cy pres.* Perry on Trusts, secs. 722, 727; *Moore* v. *Moore,* 4 Dana, 354; *Starkweather* v. *Bible Society,* 72 Ill. 57.

The residuary clause of the codicil being ineffectual to pass the property, the rest and residue of the estate goes to the heirs-at-law. *Cloyne* v. *Young,* 2 Ves. Sr. 91; 1 Jarman on Wills, 332; *Laughton* v. *Atkins,* 1 Pick. 535; *Wolf* v. *Bollinger,* 62 Ill. 368.

A codicil or subsequent will containing a new disposition, or attempted disposition, of the property disposed of by the prior will, operates as a revocation, when such new disposition is invalid. *Hairston* v. *Hairston,* 30 Miss. 276; *Read* v. *Manning,* id. 308; *Price* v. *Maxwell,* 28 Pa. St. 23; *Gossitt* v. *Weatherly,* 5 Jones' Eq. 46; *Colvin* v. *Warford,* 20 Md. 257; *Dempsey* v. *Lawson,* 46 L. J. 23.

The residuary clause of the codicil converts the residuum of the estate into a trust fund, and the trust being invalid, there is a resulting trust to the heirs-at-law. *Williams* v. *Williams,* 4 Seld. 548; *Bane* v. *Wick,* 19 Ohio, 328; *Saylor* v. *Plaine,* 31 Md. 158; *Wright* v. *Hicks,* 12 Ga. 155; *Bender* v. *Dietrick,* 7 W. & S. 284; *Hitchcock* v. *Hitchcock,* 35 Pa. St. 393; *King* v. *Mitchell,* 8 Pet. 348; Story's Eq. Jur. sec. 1200; *Frazier* v. *Frazier,* 2 Leigh, 642.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was a bill in chancery, filed by the heirs-at-law of Esther S. Chapman, deceased, against the Attorney General of the State, and the executors of the will of the decedent, to have a certain portion of the estate left by her, declared to be intestate, and to belong to the complainants, as heirs-at-law of the decedent.

The will, executed March 15, 1883, after making sundry bequests to various persons other than the complainants, concluded with this residuary clause: "All the residue of my estate I devise and bequeath unto the legatees hereinbefore named, in equal proportions, excepting said Oakwood Seminary and said Sylvester M. Chapman." Subsequently, on April 5, 1885, the testatrix executed a codicil, which contained this residuary clause: "All the rest and residue of my estate, including that which may lapse for any cause, I direct to be invested or loaned, upon the best terms possible, so as to produce the largest income, and said income to be distributed annually among the worthy poor of the city of La Salle, in such manner as a court of chancery may direct." Executors of the will were appointed. The decedent left both real and personal estate.

The bill alleges that the city of La Salle is situated in the town of La Salle, and includes but a small portion of the territory of the town, and that there is not now, nor has there ever been, in said city, any organization or association, voluntary or otherwise, for the distribution of charity to the poor of the city, and that the municipal authorities have no duties imposed upon them to provide for the poor, and claims that the residuary clause of the codicil is incapable of execution by reason of the uncertainty of the beneficiaries intended by the testator, and void, and that, in consequence, all the rest and residue of the estate, both real and personal, after the payment of the general and specific legacies, was intestate.

estate. A demurrer to the bill was interposed by the Attorney General and the executors, which was overruled by the court, whereupon the executors answered, denying the invalidity of the residuary clause of the codicil, or that it was incapable of execution, and setting up, that even if such were the case, the rest and residue of the estate must be distributed in accordance with the residuary clause of the will. Thereupon, the bill was amended by making the residuary legatees specified in the will, additional parties defendant. Subsequently, a hearing was had, upon pleadings and proofs, and a decree was entered, finding that the residuary clause of the codicil was ineffectual to dispose of the property, but that it nevertheless revoked the residuary clause of the will, and declaring that the real estate of which the testatrix died seized, belonged to the complainants, as her heirs-at-law, and directing that the rest and residue of the personal estate should be distributed to the complainants as intestate estate. From this decree, the Attorney General, the executors, and a portion of the legatees specified in the residuary clause of the will, have prosecuted this appeal.

There is, in American courts, much diversity of decision upon the subject of charitable trusts. In express private trusts there is not only a certain trustee who holds the legal estate, but there is a certain specified *cestui que trust*, clearly identified, or made capable of indentification, by the terms of the instrument creating the trust. It is an essential feature of public or charitable trusts, that the beneficiaries are uncertain,—a class of persons described in some general language, often fluctuating, changing in their individual numbers, and partaking of a *quasi* public character. (2 Pomeroy's Eq. Jur. sec. 1018.) In some of the States, the equitable system of distinctively charitable trusts is not recognized, and the courts apply only the rules applicable to express private trusts. In other States, the "Statute of Charitable Uses" of 43 Elizabeth, chap. 4, has been adopted or repealed, and thereby

decisions have been influenced. And in other cases, local legislation or supposed local policy, to more or less extent, enters into adjudications. In another, and, as believed, the larger, portion of the States, the system of charitable trusts as administered in the English court of chancery, in the exercise of its ordinary judicial power, prevails, with variation in regard to the element of certainty in the trustee and the object of the charity. A classification of the decisions in the several States will be found in 2 Perry on Trusts, sec. 748, in note, and 2 Pomeroy's Eq. Jur. sec. 1029, and note.

The prerogative power of the Crown, exercised through the Lord Chancellor, as the representative of the king, as, where there is a gift to charity generally, without appointment of a trustee, and the bounty is devoted to some particular charity, or where there is a gift to a particular charitable purpose which can not be effectuated, and it is applied to some other charitable use, *cy pres* the original purpose, is regarded not as a judicial, but a ministerial, prerogative function. This prerogative power, courts in this country do not assume to exercise.

Were this subject of charitable trusts a new question with us, there would be opened up a wide and interesting field of discussion, in order for the establishment of the proper rule in this regard. But we are saved labor in this respect, from the ground having heretofore been gone over by this court, and the rule applicable to charitable trusts having been established to be that which is administered in the court of chancery in England, in the exercise of its ordinary jurisdiction as a court of equity. This was done in the case of *Heuser* v. *Harris*, 42 Ill. 425, and where it was recognized that the statute of 43 Elizabeth, chap. 4, had been adopted in this State.

The entire contention in this case arises upon the construction, validity and effect of this residuary clause of the codicil. It is insisted, this clause is void for uncertainty as to the beneficiaries. This is not a bequest to charity generally, or

to the poor generally, but to the worthy poor of the city of La Salle. The class here is definite—the worthy poor of the city of La Salle—but the individuals of the class to whom the bounty is to be distributed are uncertain. There is always this uncertainty as to individuals in the case of public charities, and it is this feature of uncertainty which distinguishes public charities from private charities,—charitable trusts from private trusts; and to hold charitable gifts to be void because of such uncertainty, is to reject this whole distinctive doctrine of charitable trusts. 2 Redfield on Wills, 544, (66.)

In the case of a charitable bequest, it is immaterial how vague, indefinite and uncertain the objects of the testator's bounty may be, provided there is a discretionary power vested in some one, over its application to those objects. (*Domestic and Foreign Missionary Society's Appeal*, 30 Pa. St. 425; Perry on Trusts, sec. 732.) It is denied that there is any such discretionary power here given, and *White* v. *Fisk*, 22 Conn. 31, is cited in support of such denial. The bequest in that case was: "Any surplus income that may remain, to the extent of $1000 per annum, I direct to be expended by my said trustees, for the support of indigent, pious young men preparing for the ministry in New Haven." The decision was, that the gift was void, as the objects of the benefaction were indefinite, and that no power was conferred on the trustees to make them definite by selection. This case, though meeting with seeming approval in *Grimes' Exrs.* v. *Harmon,* 35 Ind. 198, has been disapproved by other high authorities. See Perry on Trusts, secs. 713, 720, 748, note 1; 2 Redfield on Wills, (2d ed.) 541, note; *Hisketh* v. *Murphy*, 36 N. J. Eq. 304. The latter case especially speaks of *White* v. *Fisk*, as a case not likely to be followed.

In *Hisketh* v. *Murphy*, the testator's will empowered and directed the trustees to employ the annual income of the fund "for the relief of the most deserving poor of the city of Patterson aforesaid, forever, without regard to color or sex; but

no person who is known to be intemperate, lazy, immoral or undeserving, to receive any benefit from the said fund." It was objected that the gift could not be applied to its objects, and was void, because the will did not confer upon any one the power of ascertainment of the individuals who should receive the benefit of the bequest. But the court held that the power given the trustee, by the will, to distribute the fund, carried with it, by necessary implication, the power to select the beneficiaries from the designated class, and upheld the bequest. We entirely agree with the criticism there made by Chief Justice Beasley, upon the case of *White* v. *Fisk*, that there was a mistaken assumption on the part of the court in that case that there was no power to select the objects of the charity, lodged by the testator in the trustees,—that when a power is conferred on the trustees to distribute the fund to members of a class, such members having certain qualifications which can be ascertained only by the exercise of judgment and discretion, as the act of distribution can not be performed except after such ascertainment of the particular beneficiaries, the principal power to distribute the moneys carries with it the incidental and necessary power of selection. And this, upon the ordinary doctrine that when an act is authorized to be done by a trustee or other agent, every authority requisite to the doing of such act is, by intendment of law, comprised in such grant of power. See *Pickering* v. *Shotwell*, 10 Pa. St. 23, that the power in the trustee to act at discretion need not be expressly given, if it can be implied from the nature of the trust. In the later case of *Erskine* v. *Whitehead*, 84 Ind. 357, the decision in *Grimes* v. *Harmon* does not seem to be approved in its full extent.

In *Heuser* v. *Harris, supra*, the bequest of money was "to the poor of Madison county," the interest only to be used, with no appointment of a trustee. As the county court of Madison county was charged by law with the support of the paupers in the county, it was held, in that particular case,

that the poor of the county were its paupers, and that the fund should be held by the county court, to be applied for the latter's support.   It is not to be the inference from that case that a charitable bequest to the poor necessarily means to paupers, and that the trust is only to be executed by somebody charged by law with the support of paupers.   "A bequest in trust for the poor inhabitants of a particular place, parish or town, is a charitable trust for the poor not receiving parochial or municipal aid and relief as paupers, on the ground that the charity is for the poor and not for the rich, and if it was applied to the maintenance of those supported by the parish, town or county, it would relieve wealthy tax-payers from their taxes, and not materially aid the poor."  Perry on Trusts, sec. 698.

It is said in 2 Redfield on Wills, (2d ed.) 805, that some of the American cases have gone great lengths in carrying into effect the intention of the testator, when there was great indefiniteness in the objects of the trust; "that the want of a trustee, in such cases, is never any obstacle in the way of a court of equity carrying into effect any trust, and more especially one of a charitable character."

Mr. Pomeroy, in speaking of the distinguishing features between charitable and private trusts, says, that in the case of the former, "not only may the beneficiaries be uncertain, but that even when the gift is made to no certain trustee, so that the trust, if private, would wholly fail, a court of equity will carry the trust into effect, either by appointing a trustee, or by acting, itself, in place of a trustee."  2 Pomeroy's Eq. Jur. secs. 1025, 1026.   And see *Brown* v. *Kelsey*, 2 Cush. 243, and *Washburn* v. *Sewall*, 9 Metc. 280.

There can be no question of the general rule.   But it is said it does not apply in a case where there is such indefiniteness as to beneficiaries as here.   Numerous are the instances which might be cited where there was the want of a trustee, and the court executed the trust in cases of equal indefinite-

ness as here, as to the objects of the trust. As in *McCord* v. *Ochiltree*, 8 Blackf. 15, where the legacy was for the education of pious, indigent youths; in *Bull* v. *Bull*, 8 Conn. 47, where the executors were to dispose of the residue of the estate "among our brothers and sisters and their children, as they shall judge shall be most in need of the same, this to be done according to their best discretion," and the executors died, never having exercised the power nor executed the trust; in *Williams* v. *Pearson*, 38 Ala. 299, where the beneficiaries named were "all the paupers and poor children of two designated 'beats,' whose parents are not able to support them;" in *Howard* v. *American Peace Society*, 49 Me. 288, where the gift was to the suffering poor of the town of Auburn. Where a legacy is given to trustees to distribute in charity, and they all die in the lifetime of the testator, yet the legacy will be enforced in equity. 2 Story's Eq. Jur. sec. 1166.

An extended collection of cases on the general subject may be found in note to *Hisketh* v. *Murphy*, 35 N. J. Eq. 23, and in 1 Jarman on Wills, 403, in note. Mr. Perry sums up, as the result of the principles and authorities, that a "bequest for charity generally, * * * or to the poor generally, or to charity generally, with no trustees appointed, will not be carried into effect by the courts in this country." Perry on Trusts, sec. 729. That "if a testator makes a general and indefinite bequest to charity, or to the poor, or to religion, and appoints no trustee, but plainly refers such appointment to the court, there would seem to be no impropriety in the court appointing a trustee, according to the plain intent of the donor, leaving such trustee to find his power in the will of the donor. But if a testator makes a vague and indefinite gift to charity, and names no trustee, and gives no power to the court to appoint one, there is no power in the American courts to administer such an inchoate and imperfect gift." (Id. sec. 731.) That "it is immaterial how uncertain the beneficiaries and objects are, if the court, by a true con-

struction of the instrument, has power to appoint trustees to exercise the discretion or power of making the beneficiaries as certain as the nature of the trust requires them to be." Id. sec. 732. See, also, 2 Story's Eq. Jur. sec. 1169.

In the present case, the testatrix appoints no trustee to distribute the fund, but expressly refers its distribution to a court of chancery. The power of distribution, in our opinion, carries with it the power to select the individuals to whom distribution shall be made. The trustee appointed by the court to make the distribution will have the incidental power to select the beneficiaries, so that the case stands the same as if the testatrix herself had appointed a trustee to distribute the fund. The trustee to be appointed by the court will, in effect, be a trustee of her appointment, made through the court of chancery.

Courts incline strongly in favor of charitable gifts, and take special care to enforce them. As observed by Mr. Perry, (sec. 687,) charitable bequests are said to come within that department of human affairs where the maxim, *ut res magis valeat, quam pereat,* has been, and should be, applied; and further, (sec. 690) that until the statute of distributions (22 Car. 2, chap. 13,) was enacted, the ordinary was obliged to apply a portion of every intestate estate to charity, on the ground that there was a general principle of piety and charity in every man. This shows the favor in which charity is held in the law. There is to be the most liberal construction of the donor's intention, in support of a charitable donation. Charities have always received a more liberal construction than the law will allow in gifts to individuals. (2 Story's Eq. Jur. sec. 1165.) The charity here is not vague and indefinite, but quite specific,—to the worthy poor of the city of LaSalle. Individuals of the class named will ever be readily found to whom the fund may be distributed. The trust is not difficult of execution, according to the intention of the testatrix. Instead of herself naming a trustee to make the distribution of

her bequest, the testatrix preferred that its distribution should be made by a court of chancery, whose peculiar province it is to effect the administration of trusts, and especially charitable trusts. There can be no doubt that the execution of the trust by such court would be to effectuate the donor's intention,—the aim which is always sought to be accomplished.

Under the principles, and the strong current of authorities, which are properly applicable, we are fully satisfied that the bequest in question is a valid, charitable gift, and that it should be carried into effect by a court of chancery, as the testatrix expressly willed that it should be. The residuary clause of the codicil being held valid, it follows that the complainants take nothing as heirs-at-law, and are not entitled to maintain their bill.

The decree of the circuit court will be reversed, and the cause remanded to that court with directions to dismiss the bill.

*Decree reversed.*

Mr. JUSTICE SCHOLFIELD: I do not concur in this opinion. I hold that courts of equity, in this State, exercise no prerogative powers, but, as contradistinguished therefrom, only judicial powers; that, not exercising prerogative powers, the court could not, by the act of the individual, be, and here is not, invested with a power not judicial, namely, that of selecting or designating the "worthy poor" to be the recipients of the testatrix' bounty; and that since it has not been and could not be invested with such power, it can not appoint and invest a trustee with such power. I concede the *testatrix* might have invested a *trustee* with such power, leaving and directing the court to appoint the trustee; but that is a very different case.