## THE GRAND PRAIRIE SEMINARY

*v.*

## DECATUR MORGAN *et al.*

*Opinion filed February 14, 1898.*

1. CHARITIES—*gift to charity will stand though manner of managing gift fails.* A gift to charity will not be allowed to fail for uncertainty as to the persons who are to take, or because the manner of managing the gift cannot be carried into exact execution, as, in such case, equity will sustain the gift and execute it, as nearly as possible on the original plan, by applying the doctrine of *cy pres.*

2. SAME—*equity will not allow gift to charity to fail for want of trustee.* Equity will not allow a valid gift to charity to fail because of the testator's failure to appoint a trustee, but will appoint trustees to take charge of the fund and manage the gift.

3. SAME—*testator's intention to favor charity must prevail though fund could be more judiciously applied.* The testator's intention in making a primary gift to charity must prevail if it can be given effect, although the fund might be more efficiently or judiciously administered by applying it to a secondary bequest to charity, made by the testator in case of the failure of the primary gift.

4. SAME—*bequest to charity sustained.* A primary gift in trust, to accumulate to a certain amount, a portion of the fund to be then applied to the erection of a school building, if the city where the testator had lived would donate a suitable lot, for the purpose of educating poor boys, the balance of the fund to be invested and the income used to pay teachers employed, is a charitable bequest, and not void for uncertainty of beneficiaries, or for incomplete directions for maintaining the school and for future control of the fund.

5. WILLS—*language of will construed as contemplating succession of trustees.* The expressions, "I hereby will and devise to my executors all the remainder of my property, to be held by them as trustees, for the purpose of carrying out the full terms of this my last will and testament," and, "I further direct that my trustees, and their successors, manage my estate," etc., used by a testator, indicate his contemplation of a succession of trustees to carry out the will.

6. SAME—*when bequest will not be held inoperative as requiring action by city beyond its power.* A charitable bequest for the erection of a school building upon a lot to be donated by a city will not be held inoperative because of the city's alleged lack of power to make the donation, where it appears from the bill to annul the bequest that the lot had been duly donated, and nothing appears to show that the city had exceeded its powers.

*Grand Prairie Seminary* v. *Morgan,* 70 Ill. App. 575, affirmed.

Appeal from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Iroquois county; the Hon. Charles R. Starr, Judge, presiding.

Stevens, Horton & Abbott, and Kay & Kay, for appellant.

R. W. Hilscher, and A. F. Goodyear, for appellees.

Mr. Justice Craig delivered the opinion of the court:

Legrande L. Wells, a citizen of Watseka, Illinois, departed this life in 1883, leaving his last will and testament, which was duly probated in the county court of Iroquois county on October 20, 1883. Three executors and trustees were appointed by the will, who duly qualified and are still acting as such. The will makes several bequests and devises, which have all been settled during the administration of the estate, and the only contention is as to the disposition of a fund of $30,000 provided for in the fifth clause of the will, and which has accumulated in the hands of the trustees. The bill was filed by the Grand Prairie Seminary of Onarga, Illinois, and makes the executors and trustees defendants. It prays for a construction of the will, and asks that the bequest for the purpose of erecting a school building upon lots in Watseka, Illinois, be declared void for uncertainty, and that the trustees be decreed to turn over to complainant this fund of $30,000. A demurrer was filed to the bill in the circuit court, which was overruled, and, defendants abiding by their demurrer, a decree was entered in favor of complainant, according to the prayer of the bill, and the executors and trustees were directed to pay the fund over to the finance committee or trustees of the Grand Prairie Seminary, the complainant, to be invested in some safe security, to be known as the "Wells fund," as by the will provided. An appeal was taken to the Appellate

Court for the Second District, where the decree of the circuit court was reversed and the cause remanded, with directions to the circuit court to dismiss the bill. From the judgment of the Appellate Court the appellee in that court has appealed to this court, and asks for a reversal of the judgment of the Appellate Court.

The latter part of the fifth clause of the will is the only part in controversy, and is as follows: "I further direct that my trustees and their successors manage my estate until it has accumulated a fund of at least $30,000, after setting aside a sufficient sum to pay all specific legacies, debts, etc., which shall form a fund known as the 'Wells fund,' and shall be used in the following manner, to-wit: If the city of Watseka will donate a suitable lot for such purpose within thirty days after being notified by said trustees, said trustees shall cause a building to be erected on said lot for the purpose of educating boys who reside in the State of Illinois, between the ages of twelve and eighteen years, and who are unable to educate themselves, which shall cost not exceeding $5000, and the balance of my estate in the hands of my said trustees after the payment for said building shall be kept at interest, and the net income, except $10 per year set apart for the purpose of keeping my family burial lot in repair, shall be used for the purpose of paying teachers employed in said school. And I further direct my said trustees, that in case the city of Watseka refuses or neglects for thirty days after being notified by the trustees that they are ready to carry out this provision in said will as to said school, then they shall pay the whole sum set apart for this purpose, over to the finance committee or trustees of Onarga Seminary, located at Onarga, Illinois, the net income of which shall be used to carry on said seminary, and shall be known as the 'Wells fund.'"

The allegations of the bill relied upon by appellant are substantially as follows: Your orator shows unto your honors that said fund has now reached upwards of

$30,000 in the hands of the trustees aforesaid, exclusive of all other specific legacies, and the time has come for the disposition thereof according to the terms of said will. Your orator has been informed and believes, and hence states, that within thirty days last passed, and within thirty days after being notified by said trustees that said fund had reached $30,000, the city of Watseka has caused to be tendered to the trustees hereinbefore mentioned a deed for lot or lots situated in said city of Watseka; that said lots were purchased by the city of Watseka, and caused to be conveyed by the owners from whom it purchased, directly to the trustees aforesaid, and the said trustees have signified the acceptance of the lots so tendered as aforesaid; that the said city of Watseka has no power or authority, in law, to furnish any lots or lands whereon to erect a school of the character designated and referred to in said will, and that the said trustees have no legal right, power or authority to receive or accept the said lots or expend any money in the erection of a building thereon, as in and by said will suggested; that it is the intention and purpose of the trustees aforesaid to set apart and expend the sum of $5000 in the erection of a building upon the lots so tendered to them, as aforesaid, by the city of Watseka; charges that said trustees have no right, power or authority, under or by virtue of said will, to expend any sum in the erection of a school building upon the lots so attempted to be donated to them by the city of Watseka; that they have no right, power or authority to take the title to the lots in themselves, as trustees; that no person is designated by said will to hold the title to said lots, nor is any person designated in said will to manage and control the fund after the expenditure of $5000 in the erection of a building; that it is not provided in and by said will that said fund shall remain in the hands of said trustees after the expenditure of said $5000 in the erection of a building, nor is any disposition attempted to be made of the

remaining portion of said fund; that the purpose of the remaining portion of said fund is to educate boys who reside in the State of Illinois, between the ages of twelve and eighteen years, who are unable to educate themselves; avers that as soon as the said building is erected the offices of said trustees, and their connection with said fund, cease; that said will does not provide any person or party to determine what boys shall be educated in said building; that it does not provide that the said trustees, or any one else, shall have any power or control over the property; that it does not provide any person, party or corporation to say what teachers shall be hired or what their compensation shall be; that it does not provide any means for operating said school, except the use of the income in the payment of teachers; that it does not provide for the heating or repairing of the building, nor does it designate any tribunal, corporation or person for that purpose; that it is wholly uncertain and indefinite, and cannot be utilized unless the court constructs the machinery and makes, practically, a will for the testator; avers, for the reasons aforesaid and other reasons, that said bequest for the erection of a school building and the operation of a school for the purpose as named is so uncertain as not to be enforced or upheld, and that to give it validity and force the court would be compelled to appoint trustees, providing for a succession of the trust, and either divert the purposes expressed in the will for the use of the income to other purposes, or procure in some method the means to carry on the school referred to in said will, to keep the property in repair, to heat it and to operate it as a school, and also some proper trustees or tribunal who should decide just what boys in Illinois are "unable to educate themselves;" claims and charges that said bequest to trustees for the purpose of erecting a building is so uncertain as to be void; shows that, under the name aforesaid, it is conducting a school for general education at Onarga, in said county, and has been so

conducting it for a period of upwards of thirty years; that it has been and is in successful operation, is well equipped with buildings and machinery and appliances for educating boys and girls, and that it is in all respects a first-class educational institution, and is capable of taking the fund mentioned in said will and using the income thereof for the education of such as may apply to said institution for that purpose; shows that the purpose of the testator, in its judgment and that of its officers, can be better carried out and effectuated by turning said fund over to your orator, its trustees or finance committee, and that to use it otherwise would be effectually to destroy and fritter away all the benefits designed by the testator in attempting to provide means for the education of poor boys, and your orator has demanded said fund and requested said trustees to turn over the same to your orator in compliance and accordance with the real intention of the testator. The bill also alleges, and appellees admit, that the Grand Prairie Seminary, the complainant in the bill, is the same seminary designated in the will as "Onarga Seminary, located at Onarga, Illinois."

*First*—Appellant contends the bequest to trustees is void for uncertainty. The bequest in this case is one for charitable uses, and is within the letter and spirit of the statute 43 Elizabeth, (chap. 4,) which is in force in this State. (*Heuser* v. *Harris*, 42 Ill. 425.) Story says: "Another principle equally well established is, that if the bequest be for charity it matters not how uncertain the persons or the objects may be, or whether the persons who are to take are *in esse* or not, or whether the legatee be a corporation capable in law of taking or not, or whether the bequest can be carried into exact execution or not, for in all these and the like cases the court will sustain the legacy and give it effect according to its own principles; and where a literal execution becomes inexpedient or impracticable, the court will execute it as nearly as it can according to the original purpose, or as (as the tech-

171—29

nical expression is) *cy pres.*" (Story's Eq. Jur. sec. 1169.)
The rule laid down by Story was approved by this court
in *Heuser* v. *Harris, supra,* and later in *Andrews* v. *Andrews,*
110 Ill. 223.

Tested by this principle, the primary bequest in the
latter part of the fifth clause of the will in the case under
consideration must be sustained.    The bequest is chari-
table.    The language of the will is, "for the purpose of
educating boys who reside in the State of Illinois, between
the ages of twelve and eighteen years, *and who are unable
to educate themselves.*"    The *object* of the bequest is *certain* and
so are the *recipients.*    The *location* for the school building
is *definite*—"when the city of Watseka shall donate a suit-
able lot."    A fund is provided and trustees are appointed,
who "shall cause a building to be erected on the said lot,"
and the net income of the fund, after the erection of the
building, "shall be used for the purpose of paying teach-
ers employed in said school."

Appellant's contention that the bequest is not capable
of enforcement because no provision is made for funds
to maintain the building after its erection, and to heat
and care for it, and to furnish school books, clothing and
board, is not tenable.    It seems to be an established rule
of interpretation that the court is bound to carry a gift
into effect if it can see a general charitable intention
consistent with the rules of law, even if the particular
manner indicated by the donor is illegal or impracticable.
(Perry on Trusts, sec. 709.)    These minor details should
not be allowed to defeat the bequest if it is possible to
carry out the intention of the testator.    In *Gilman* v.
*Hamilton,* 16 Ill. 225, where the fund was in land which
continued for eight or ten years to be of little value and
insufficient for the erection of buildings and the endow-
ment and support of the institution, it was attempted to
divert it to Illinois College.    Judge Scates said (p. 229):
"This is the only reason I have heard assigned to show
the impracticability of executing the trust, and a failure

of the objects of the charity.   I do not think this satis-
factory evidence.   It may not now, but may be sufficient
at a future day for that purpose.   But I might admit even
a conclusion that it never could become sufficient, and
still it may not show a total failure of the charity.   Others
may contribute, other means and funds may be obtained,
and the end accomplished.   Very few donations of this
kind are alone sufficient to accomplish fully the designs
and objects of the benevolent.   Should all donations be
tested by a rule of sufficiency in themselves, there would
be but few that might not be diverted from the original
purpose."

*Second*—Appellant contends that the will does not pro-
vide for any trustees to control the fund after the estate
is settled and the building erected, and does not indicate
in any way that a court of chancery shall have power to
appoint trustees.   By a careful inspection of the whole
will, and construing it so as to give effect to each part,
we are led to the conclusion that it was the manifest in-
tention of the testator that the trustees were to continue
to manage the fund after the building should be erected.
In the second clause of the will, after nominating appel-
lees as executors, the following language is used:   "And ·
I hereby request that they continue to act as such exec-
utors and trustees of my estate until the same be fully
settled."   Again, in the fifth clause:   "I hereby will and
devise to my executors all the remainder of my property,
*   *   *   to be held as trustees by them for the purpose
of carrying out the full terms of this my last will and
testament."   To carry out the full terms of the will and
give effect to the intention of the testator included not
only the erection of the building but putting the school in
operation.   That the donor intended to provide for trus-
tees to control the disposition of this fund is indicated
by the following words:   "I further direct that my trus-
tees and their successors manage my estate," etc.   This
clearly contemplates succession or the continuance of

trustees, for the carrying out of the full terms and purposes of the will. Moreover, the bequest being charitable and valid, a court of chancery will provide or appoint trustees to take charge of the fund, and will not allow it to fail because the donor did not designate a trustee.

In *Heuser* v. *Harris, supra,* the testator provided that one-half of the interest on the fund created should go to the school district where the farm was situated and should be under the control of one person elected by the people of the district, and the other half should go to the support of the poor of Madison county. It was contended that the will provided no way by which the person who was to have the control of the fund could be elected, and as to that part of the will giving the other half to the support of the poor of Madison county,—that it was void for uncertainty and could not be carried into effect. We there said (p. 432): "If, however, a trustee should not be elected the school district could apply to chancery to supply one, by giving to the will the most liberal construction, so as not to permit the bequest to be lost. Over this subject the jurisdiction of chancery is unquestionable, the statute 43 Elizabeth (chap. 4) being in force in this State."

A court of chancery having jurisdiction over the trust can appoint trustees to control the fund and manage the school when the duties of the present trustees shall cease and the contingency arises. Besides this, a recent act of the legislature of this State has made provision by which a corporation may be created to carry out bequests like the one under consideration. (Laws of 1895, p. 134.)

The bequest for the erection of a building for the purpose of educating boys who reside in the State of Illinois, between the ages of twelve and eighteen, who are unable to educate themselves, is a *primary bequest,* while the bequest to appellant is *secondary* or *contingent.* If the city of Watseka will donate a lot for such purpose within thirty days after being notified by the trustees, then said

trustees shall cause a building to be erected, etc.   The
second or contingent bequest could only become effective
when the city of Watseka failed to donate a suitable lot
for the purpose of erecting a school building thereon,
within thirty days after being notified that the fund had
reached $30,000.   It appearing by the bill of complaint
that the city of Watseka had tendered a deed and com-
plied with the conditions of the bequest, the first bequest
must prevail, and the intention of the testator must be
carried out "even though the fund could be more effi-
ciently or judiciously administered in another place or
applied to a different object."   *Gilman* v. *Hamilton, supra.*

The point made that the city of Watseka had no right
to donate a lot is fully answered in the opinion of the
Appellate Court, (70 Ill. App. 575,) as follows: "As to
the proposition that the bequest is invalid because it is
based upon the condition that the city of Watseka shall
donate a suitable lot upon which to erect the school build-
ing, we do not agree with the contention of appellee.
Nor does it seem to us that appellee has any right to
raise that question.   The will does not require the city
of Watseka, in its corporate capacity and by the use of
public funds, to procure and donate the lot.   If it had,
then the power of the city to make such donation for the
purpose of having a school established within its limits
might depend upon its charter and the authority therein
conferred upon the municipality, and as to this question
there is nothing in the bill or the record to show what
powers the city possessed.   But we think this clause in
the will means nothing more than if the condition had
been that the citizens of Watseka should donate the lot.
It was not impossible for the city, as a municipality, to
comply with the condition without violating any public
law or using public funds for the purpose.   If the citizens
of Watseka voluntarily raised the money to purchase a
suitable lot and conveyed it to the city in trust, to be
donated for the purpose of meeting the condition of the

will, we fail to see wherein there would be anything illegal in the transaction. It appears from the record that this condition of the will has been complied with by the city, and the lot has been donated and conveyed to the trustees. Whether or not the city used public funds to purchase the lot, or whether they were donated by benevolent citizens who desired the condition complied with, does not appear. The donation may have been perfectly legal, and the bequest is not to be declared void because the testator may have ignorantly contemplated an act beyond the power of the city. The bequest can be made good without the doing of any illegal act on the part of the city, and if so, we are not authorized to hold it void."

After a careful consideration of the case and the able argument of counsel representing the respective parties, we are satisfied that the judgment of the Appellate Court directing the circuit court to dismiss the bill is correct, and it will be affirmed.      *Judgment affirmed.*