SARAH A. KEMMERER, Exrx., *et al.* Appellants, *vs.* JOHN B.
KEMMERER *et al.* Appellees.

*Opinion filed February 20, 1908—Rehearing denied April 10, 1908.*

1. PLEADING—*when cross-bill is not germane to bill to construe will.* A cross-bill, in a proceeding in chancery to construe a will, in so far as it seeks to impeach the judgment of the county court admitting the will to probate, is a collateral attack upon such judgment and is not germane to the original bill, and the court does not err in refusing to submit to a jury the question of the execution of the instrument nor in holding the will to be duly established.

2. CHARITIES—*what constitutes a charity or charitable use.* An orphans' home "for the friendless poor of all denominations" is a charity or charitable use within the meaning of the law, and falls within the general intent and scope of the statute of 43 Elizabeth, (chap. 4,) which is a part of the common law in force in Illinois.

3. TRUSTS—*when trust for charity does not fail because no one is designated "trustee."* A trust for charity does not fail because the testator has not designated any person as "trustee," where the testator's widow is named as executrix, "with full power to execute" the will, and duties are imposed upon her by the will which belong only to a trustee, since the widow, though named only as executrix, may carry into effect the provisions of the trust, and if she fails to act a court of equity will appoint a trustee.

4. SAME—*use of word "trust" or "trustee" is not essential.* If the testator, though not using the word "trust" or "trustee," has named a person in his will and directed him to carry out a provision therein for the benefit of others, the person named will be held to be a trustee, and if it is necessary for him to hold the legal title as trustee in order to carry out such provision, he will, by implication, hold such title.

5. SAME—*uncertainty as to beneficiaries is cured if some one is appointed to select them.* A charitable trust will not be allowed to fail because of any uncertainty as to the beneficiaries who are to enjoy the testator's bounty, where some one is appointed in the will to make a selection and render such matter certain.

6. SAME—*when a charitable trust will not fail because beneficiaries are too uncertain.* A trust for the purpose of erecting and maintaining an orphans' home "for the friendless poor of all denominations" will not fail because of uncertainty and indefiniteness as to the beneficiaries, where the will designates a church organization which shall control the home when it is erected.

7. SAME—*provision of charitable trust construed as to who may control orphans' home.* Where a will creating a trust for the purpose of erecting and maintaining an orphans' home "for the friendless poor of all denominations" provides that the home shall be controlled "by the Presbyterian churches of central Illinois," the ruling bodies of those churches in the presbyteries shown to be situated near the center of the State have power to control the home and to select from "the friendless poor of all denominations" those who shall enjoy the testator's bounty.

8. SAME—*courts will sustain trust for charity if it can be done.* The courts of Illinois will sustain a trust for charity if it is sufficiently certain to enable the court, in the exercise of its ordinary chancery powers, to carry out the donor's charitable intent.

9. SAME—*what facts do not render trust incapable of being carried out.* The facts that the fund intended for establishing an orphans' home has been depleted because the widow elected to take under the statute instead of the will, and that certain land which the testator directed should be sold to raise a fund to erect the needed building was sold by him in his lifetime, do not render the trust incapable of execution, where it appears that there are funds and land remaining which are available, under the terms of the will, to carry out the testator's intention.

FARMER, J., dissenting.

APPEAL from the Circuit Court of Christian county; the Hon. A. M. ROSE, Judge, presiding.

Philip B. Kemmerer died childless on December 25, 1905, at Assumption, in Christian county, where he had lived for many years, leaving him surviving Sarah A. Kemmerer as his widow, and certain brothers and sisters and nieces and nephews, the appellees, as his heirs-at-law, and two certain instruments in his own handwriting, purporting to be a will and a codicil, and bearing date, respectively, October 9, 1884, and December 31, 1900, were admitted to probate as his last will and testament on February 5, 1906, by the county court of Christian county. Sarah A. Kemmerer qualified as executrix, and after declining to take under the will and electing to take under the law, filed an inventory showing the estate to consist of personal and real estate approximating in value $100,000, and on April 2,

1906, filed this bill in chancery in the circuit court of Christian county for a construction of the provisions of said will. The heirs of Philip B. Kemmerer answered the bill and filed a cross-bill, in which they averred that said instruments were improperly admitted to probate as the last will and testament of Philip B. Kemmerer, deceased, and that the trust provisions therein contained were so indefinite and uncertain that they could not be carried into effect, and asked the court to hold the estate of said Philip B. Kemmerer to be intestate, and to decree them, subject to the rights of the widow, to be the owners thereof. The presbyteries of Mattoon and Springfield of the Presbyterian Church of Illinois, and the Attorney General on behalf of the People, by leave of court intervened and set up by petition that a trust for charitable purposes was created by the will of Philip B. Kemmerer, deceased, and asked that such trust be established. Answers and replications were filed and a trial was had before the court, and a decree was entered finding that said instruments in writing were properly admitted to probate as the last will and testament of Philip B. Kemmerer, deceased, but that the provisions thereof were so indefinite · and uncertain that they could not be carried into effect and were therefore void, and that the estate of said Philip B. Kemmerer, deceased, should be distributed as intestate property. The presbyteries of Mattoon and Springfield of the Presbyterian Church of Illinois, and the Attorney General in the name of the People, have prosecuted an appeal to this court, and have assigned errors calling in question the correctness of the said decree, and the appellees have assigned cross-errors.

MILLS BROS., and S. S. ANDERSON, (W. H. STEAD, Attorney General, of counsel,) for appellants.

JAMES M. TAYLOR, LESLIE J. TAYLOR, and HOGAN & WALLACE, for appellees.

Mr. CHIEF JUSTICE HAND delivered the opinion of the court:

The appellees have assigned as cross-errors that the trial court improperly declined to submit the question to a jury whether said instruments purporting to be a will and codicil were the last will and testament of Philip B. Kemmerer, deceased, and in holding that said instruments were duly proven as the last will and testament of Philip B. Kemmerer, deceased.

The original bill was filed by the executrix to obtain a construction of the provisions of said will, and the cross-bill, in so far as it attempted to impeach the judgment of the county court of Christian county in admitting said instruments to probate as the last will and testament of Philip B. Kemmerer, deceased, was a collateral attack upon the judgment of said county court. The jurisdiction of courts of equity to entertain bills to contest wills is exclusively derived from statute, and such jurisdiction can only be exercised in the mode and within the limits prescribed by statute. (*Luther* v. *Luther,* 122 Ill. 558; *Jele.* v. *Lemberger,* 163 id. 338; *Calkins* v. *Calkins,* 229 id. 68.) The judgments of the county courts of this State in admitting wills to probate, where the courts had jurisdiction of the subject matter, are conclusive until set aside upon appeal or by proceeding under the provisions of section 7 of chapter 148 of the Revised Statutes, entitled "Wills." The cross-bill, in so far, therefore, as it attempted to call in question the action of the county court of Christian county in admitting said instrument to probate as the last will and testament of Philip B. Kemmerer, deceased, was not germane to the original bill, and the court did not err in declining to submit the question of the execution of said instruments to a jury or in holding the said instruments were duly established as the last will and testament of Philip B. Kemmerer, deceased.

The instruments purporting to be the last will, and a codicil thereto, of Philip B. Kemmerer, deceased, are inartificially drawn. We think, however, the intention of the testator is clearly expressed therein. The will provides that the testator's debts and funeral expenses shall be paid; that his widow shall have his house and three lots on Oak street, his household goods and library, and $200 per annum for her support as long as she remains his widow, and in case he shall leave him surviving no child or children or the descendants thereof, or in case he should leave a child or children him surviving and said child or children should die childless, then the will provides all his "personal and real estate shall be used for an orphans' home * * * for the friendless poor of all denominations. This home shall (be) controlled by the Presbyterian churches of central Illinois." Direction is given as to the tract of land upon· which the orphanage shall be erected, and that certain real estate be sold to obtain funds with which to erect said orphanage, to pay debts, etc. The codicil provides that his wife shall receive $1000 and his household and chattel property and that certain real estate shall be sold, and that the income of the residue of his estate shall be used for the support of the orphanage provided for in the will to be erected, and names his wife as executrix without bond, and provides she shall have $1000 for her labor as such, and that she "shall have full power to execute this my last will and testament."

That "an orphans' home," "a home for the friendless and orphan poor," "an orphans' home for the friendless poor of all denominations," is a charity or charitable use within the meaning of the law and falls within the general intent and scope of the statute of 43 Elizabeth, (chap. 4,) as defined by the courts, (*Jackson* v. *Phillips,* 14 Allen, 539; *Crerar* v. *Williams,* 145 Ill. 625; *Welch* v. *Caldwell,* 226 id. 488;) we think is too plain for argument. In *Heuser* v. *Harris,* 42 Ill. 425, a bequest to be used for school purposes, also a bequest to be used for the benefit of the poor

of Madison county, were sustained by this court as charitable bequests; and in *Holden* v. *Board of Commissioners of Cook County,* 87 Ill. 275, a devise in trust for the benefit of an insane asylum to be organized, located and established in the northern part of Illinois, under and by virtue of some State or municipal authority; and in *Preachers' Aid Society* v. *England,* 106 Ill. 125, a conveyance of land in trust for the Preachers' Aid Society of the Illinois Conference of the Methodist Episcopal Church and for the widows and orphans of such preachers as might be dead; and in *Hunt* v. *Fowler,* 121 Ill. 269, a bequest of income to be distributed annually among the worthy poor of the city of LaSalle in such manner as a court of chancery might direct; and in *Guilfoil* v. *Arthur,* 158 Ill. 600, a conveyance of real estate in trust for the widows and home and school for orphans of deceased members of the brotherhood of locomotive engineers; and in *Grand Prairie Seminary* v. *Morgan,* 171 Ill. 444, a bequest for the purpose of educating boys who reside in the State of Illinois, between the ages of twelve and eighteen years and who are unable to educate themselves; and in *Trafton* v. *Black,* 187 Ill. 36, a bequest to the testator's executor in trust for the purpose of erecting church buildings within certain prescribed territory for certain named denominations; and in *Welch* v. *Caldwell, supra,* a bequest for charitable purposes, the McDonough County Holiness Association to receive a portion of said bequest, were each sustained by this court as a charity.

It is, however, urged that the gift for charity in this case cannot be sustained, as it is said there is no trustee appointed to administer the trust. The testator appointed his wife, Sarah A. Kemmerer, his executrix, and provided that she "shall have full power to execute this my last will." We think it clear that duties are conferred upon Sarah A. Kemmerer by the last will and testament of Philip B. Kemmerer, deceased, which belong to a trustee. Land is to be sold to produce a fund with which to erect an orphanage;

land is to be rented with which to produce a fund with which to support the orphanage when erected, and the orphanage is to be erected; and the law is well settled that where an executor or executrix is charged with duties which do not properly belong to them as such, but to a trustee, such executor or executrix will be held to be a trustee. The duties hereinbefore referred to pertain to those of a trustee, and are included and are contained within the powers conferred upon the executrix "to execute this my last will." In *Welch* v. *Caldwell, supra,* the testator created a trust for charitable purposes and named his wife as executrix. He charged his wife with duties properly belonging to a trustee although he did not designate her as trustee, and it was held that the trust was not defeated by reason of the fact that the testator failed to designate his wife, in express terms, as trustee of the funds set aside for charitable purposes. We think the trust for charity created by Philip B. Kemmerer, deceased, is not void by reason of the failure of the testator to appoint a trustee to execute the trust in express terms, and that Sarah A. Kemmerer, although named only as executrix, has the power conferred upon her, as trustee, to execute and carry into effect the provisions of said will in so far as it is necessary to obtain the funds with which to erect and support said orphanage, and that in case Sarah A. Kemmerer should fail or refuse to act, or should die, a court of chancery would not permit the trust for charitable purposes created by Philip B. Kemmerer, deceased, by his last will and testament, to fail for want of a trustee, but that such court would appoint a trustee to act in her stead. *Hoeffer* v. *Clogan,* 171 Ill. 462; *Welch* v. *Caldwell, supra.*

In creating a trust the testator need not employ the words "trust" or "trustee." If he has named a person in his will and has directed him to carry out all or a portion of the provisions which have been made for the benefit of others therein, the person thus named will be held to be a

trustee, and if he cannot carry out the provisions of the will except the legal title to the property be held to be in him as trustee, then he will be held, by implication, to hold the legal title to the property which he is directed to convey. 2 Underhill on Wills, sec. 781; 1 Perry on Trusts, sec. 262; 2 Pomeroy's Eq. Jur. (2d ed.) sec. 1011; *Hale* v. *Hale,* 125 Ill. 399; *Olcott* v. *Tope,* 213 id. 124.

The further contention is made that the trust attempted to be created by the last will and testament of Philip B. Kemmerer, deceased, is so uncertain and indefinite that it cannot be executed. There is no uncertainty or indefiniteness as to the subject matter of the trust, as all the property of which Philip B. Kemmerer died seized, remaining after his debts and funeral expenses have been paid and his widow's rights under the law have been satisfied, she having declined to take under the will and elected to take under the law, is devoted to the charitable purposes specified in said last will and testament of Philip B. Kemmerer, deceased. Neither is there any uncertainty or any indefiniteness as to the object of the charity, as the property of the testator set aside for charity is to be used in the erection and maintenance of an orphans' home, and there is a trustee named to convert so much of the property of the testator into money as may be necessary for the purpose of erecting the orphans' home, and the trustee is authorized to rent the balance of the land to the end that an income may be produced from which the orphans' home, when erected, can be maintained. The only indefinite and uncertain matter connected with the trust is who are the beneficiaries of the trust which has been created by the testator. It is an essential feature of charitable trusts that the beneficiaries are uncertain. Mr. Justice Gray, in the case of *Jackson* v. *Phillips, supra,* on page 556, defined a charity as follows: "A charity, in the legal sense, may be more fully defined as a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons,

either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government. It is immaterial whether the purpose is called charitable in the gift itself, if it is so described as to show that it is charitable in its nature." See *Crerar* v. *Williams, supra.*

The will of Philip B. Kemmerer provides that an "orphans' home," which is the object of the trust, is to be erected and supported "for the friendless poor of all denominations." The beneficiaries of the trust are therefore the orphan friendless poor of all denominations, and constitute an indefinite number of persons, and the important question to be determined is, is such class so indefinite and uncertain that the trust for charity created by the testator must fail for want of beneficiaries to enjoy the same? An examination of the cases heretofore cited will readily satisfy the mind of any discerning man that this court from its early history has uniformly dealt with the greatest liberality with charitable trusts, and that much uncertainty or indefiniteness as to beneficiaries is permitted under the law of this State; and it has been repeatedly held that a charitable trust will not be held to fail on account of any uncertainty as to the persons to whom it is to be applied, if there be someone appointed to make a selection and thereby render certain the beneficiaries who are to enjoy the testator's bounty. This doctrine proceeds upon the ground that that will be regarded as certain which can be rendered certain. (*Welch* v. *Caldwell, supra,* and cases cited.) This will provides this home "shall (be) controlled by the Presbyterian churches of central Illinois." We have, therefore, here designated, in express terms, the church organization which is to control and manage this orphans' home when it is completed, and that control is unlimited except in this :

that it is created for the orphan friendless poor of all denominations.

It is urged, however, that the Presbyterian churches of central Illinois, as such, have no corporate existence, and that they cannot for that reason select the beneficiaries who are to enjoy the benefit of the trust created for charitable purposes. This contention proceeds upon the hypothesis that the designation, the orphan friendless poor of all denominations, is a too general and indefinite designation of the persons who are to enjoy the benefit of the testator's bounty. In *Grand Prairie Seminary* v. *Morgan, supra,* the beneficiaries were boys who resided in the State of Illinois, between the ages of twelve and eighteen years, and who were unable to educate themselves, and such designation of the beneficiaries of the charity was held sufficient. If the designation of the beneficiaries was sufficient in that case we do not see why the designation of the beneficiaries in this case is not sufficient.

If, however, it be conceded that the designation, the orphan friendless poor of all denominations, is too general and uncertain a designation of the beneficiaries, we are of the opinion that there is found in this will a legally constituted body that may determine the beneficiaries who are to enjoy the bounty of this testator. The parties stipulated at the hearing that the Presbyterian Synod of Illinois consisted of eleven presbyteries, and that the Presbyterian Church of Assumption, Illinois, of which Philip B. Kemmerer was a member, is within the boundaries of the presbytery of Mattoon; that the session of the Presbyterian churches consists of elders elected by the members, and the pastor in charge, and that the sessions and representatives from these sessions within a given territory represent and constitute the presbytery of that territory, and from a map in this record it appears that the presbyteries of Mattoon and Springfield are formed from contiguous territory and are situated geographically near the center of the State. We

doubt not the testator, in providing that the orphans' home which the will directed should be erected and maintained should be controlled by the Presbyterian churches of central Illinois, meant to provide that the ruling body or bodies of the church in central Illinois of which he was a member should have control of said orphans' home when erected, which appear to be the presbyteries of Mattoon and Springfield of the Presbyterian church of Illinois. The testator having conferred the power upon these ruling bodies in the church to which he belonged to control the orphans' home which he provided by his will should be erected and maintained, we think it clear said bodies have ample power to designate the beneficiaries who are to enjoy the testator's bounty,—that is, to determine what orphan friendless poor of all denominations shall be admitted to the benefits of said orphans' home. We also think it clear that the testator intended that his wife, whom he named as executrix of his will, should provide the funds with which to erect said home; that he intended to confer upon her the power to sell real estate if such sale should become necessary in order to obtain such funds, and that he intended to confer upon her power to cause said orphans' home to be erected, and that she should rent his real estate and loan the personal property, and from such rents and income provide a fund for the support of said orphans' home, and said home, when erected, should be controlled by the ruling body or bodies of the church of which he was a member, located in central Illinois, and that the persons who should enjoy his bounty should be designated by the ruling power in the church of which he was a member. This being true, the trust can be maintained and carried into effect, we think, without difficulty.

The will set apart certain of the lands owned by the testator, located near Assumption, for a site for the orphans' home, and provided that certain other lands located in that vicinity should be sold to provide a fund with which to erect

233—22

the orphans' home. The codicil changed the location somewhat, and provided that certain lands belonging to the testator located in Clay county should be sold to raise a fund with which to erect an orphans' home, and it is averred in the bill that the Clay county lands were sold by the testator in his lifetime, and, it is argued, for that reason the trust cannot be carried into effect. In *Grand Prairie Seminary* v. *Morgan, supra,* where the object of the trust was to establish a school for the purpose of educating boys who resided in the State of Illinois, between the ages of twelve and eighteen years, and who are unable to educate themselves, on page 449 this court said: "Appellant contends the bequest to trustees is void for uncertainty. The bequest in this case is one for charitable uses, and is within the letter and spirit of the statute 43 Elizabeth, (chap. 4,) which is in force in this State. (*Heuser* v. *Harris,* 42 Ill. 425.) Story says: 'Another principle equally well established is, that if the bequest be for charity it matters not how uncertain the persons or the objects may be, or whether the persons who are to take are *in esse* or not, or whether the legatee be a corporation capable in law of taking or not, or whether the bequest can be carried into exact execution or not, for in all these and the like cases the court will sustain the legacy and give it effect according to its own principles; and where a literal execution becomes inexpedient or impracticable, the court will execute it as nearly as it can according to the original purpose, or as (as the technical expression is) *cy pres.*' (Story's Eq. Jur. sec. 1169.) The rule laid down by Story was approved by this court in *Heuser* v. *Harris, supra,* and later in *Andrews* v. *Andrews,* 110 Ill. 223."

In this State the statute of 43 Elizabeth (chap. 4) is a part of the common law, (*Heuser* v. *Harris, supra; Andrews* v. *Andrews,* 110 Ill. 223;) and the efforts of the courts of this State have always been to sustain a gift for charity if it can be done, and while the courts of this State

do not assume to exercise the prerogative powers which the courts of England have at times exercised, if a trust for charity is sufficiently certain to enable the courts, in the exercise of their ordinary chancery powers, to carry out the donor's charitable intent they will not allow the trust to fail; (*Welch* v. *Caldwell, supra;*) and the fact that the fund will be depleted one-half by reason of the fact that the widow has taken under the law and not under the will, will not defeat the trust, (*Gilman* v. *Hamilton,* 16 Ill. 225,) as other means may be donated towards the erection and maintenance of said orphans' home and the testator's object thereby fully accomplished. It was said by the court in the *Gilman case,* on page 229: "Very few donations of this kind are alone sufficient to accomplish fully the designs and objects of the benevolent. Should all donations be tested by a rule of sufficiency in themselves, there would be but few that might not be diverted from the original purpose to some other as near like it as could be readily found, and especially would this be true of the foundation or first donation beginnings. We have but few educational institutions, however well endowed at this day, whose earliest donations might not have been diverted for the same reasons."

As we understand this record, there are ample funds in the hands of the executrix to erect the orphans' home provided for in the will, so that no sale of real estate will be necessary for that purpose. If, however, a sale should be necessary, the widow clearly has the power, under the terms of the will, conferred upon her by implication, to make such sale. The will speaks only from the death of the testator, and if at the time of his death he did not own the real estate designated in the codicil as the site upon which he desired the orphans' home should be erected, the orphans' home might properly be erected upon the site designated in the will, which we understand from the record he did own at the time of his death. In any event, the site is not very material. The charity or charitable use impressed up-

on the estate is the important thing, and the trust should be so administered as to carry out, as nearly as possible, the intention of the testator as expressed in his last will and testament as admitted to probate.

The decree of the circuit court will be reversed and the cause remanded to that court, with directions to enter a decree in accordance with the views herein expressed.

*Reversed and remanded, with directions.*

Mr. JUSTICE FARMER, dissenting.