HICKS MEMORIAL CHRISTIAN ASSOCIATION *v.* LOCKE.

Opinion delivered January 14, 1929.

*Claude V. Holloway,* for appellant.

*Morris & Barron,* for appellee.

McHANEY, J. This case was tried on an agreed statement of facts, which is as follows:

"The city of England has a population of approximately three thousand people. The city is divided by the railroad of the Cotton Belt that runs north and south through the center of the city, but more of the inhabitants live on the east side than on the west side, possibly two thousand people live on the east side of town. On either side of the railroad is the business section of the town. Practically all of the business houses are located on the streets that parallel the railroad on either side. The testator, Mr. J. E. Hicks, on coming to England, about thirty years ago, located on the west side of town, where he lived until his death. He accumulated much business property on the west side of town, but none on the east side. His estate was worth approximately $350,000 at the time of his death. On the west side and on the street adjacent and parallel to the railroad he owned much valuable property. The property designated in the will by Mr. Hicks for the erection of the recreation building, to-wit, lots seven, eight, nine and ten, block fifty, is located on the street adjacent and parallel to the railway right-of-way. In block forty-nine, immediately south of fifty, Mr. Hicks had large holdings. On the northeast corner of block forty-nine is located the Citizens' Bank & Trust Company, which institution was organized and controlled by Mr. Hicks. He was very devoted to the bank, being the promoter thereof and a large holder of stock therein, and much of his time was consumed in making it a success. Mr. Hicks also owned considerable business property in block forty-eight, which is immediately south of block forty-nine. Most all of the business property belonging to Mr. Hicks, located near block fifty, was in his last will devised to his two sisters for life, remainder to the bodily heirs of his sister, Mrs. Robinson, all of whom are defendants in this action. The donors (donation) of the ten thousand dol-

lars, raised by plaintiffs, is being tendered with the understanding and upon the condition that the erection of the recreation building would be upon a proposed site near the high school, admitted to be an extremely desirable location. The proposed site is on the east side of town, and approximately nine blocks from block fifty. The town has one graded school, the same being located on the east side of town and within three or four blocks of the high school.

"It is further agreed that it is unlikely plaintiffs could raise the required ten thousand dollars for the erection of the recreation building on block fifty, as a large majority of the people and donors prefer the high school location, as it is much more accessible to the young girls and boys for whom it was intended, and, if placed near the high school, a considerable expense could be saved in maintaining and caring for the property, as the school's janitors and librarians could be used in connection with the recreation building at no large additional expense.

"It is finally agreed that, although the proposed high school site is probably more adapted to the location of the contemplated building, according to the consensus of opinion, yet no conditions have arisen since the death of the testator that would render the site selected by him less desirable or less adapted for the purposes specified."

The paragraph in the will of J. E. Hicks referred to in the above agreed statement of facts reads as follows:

"It is my wish and desire that my trustees and the citizens of England, Arkansas, or a committee representing the citizens, form a recreation association for the benefit of Christian young men and women of the city of England, and erect a building for their use. When said association has been organized upon such plans as may be agreed upon, my trustees shall deed and convey to such association, in trust for the purpose herein named, lots seven, eight, nine and ten, block fifty, and lots four and five, in block forty-nine, in the city of England, Arkansas. Provided, said deed is not to be made until the citizens of the city of England shall contribute the sum

of $10,000, nor until the said $10,000 in cash is delivered to my trustees, and the same shall be delivered within one year after the date of my death. If my trustees deem best, they are hereby empowered to sell lots four and five, in block forty-nine, city of England, Arkansas, and shall erect the recreational building on lots seven, eight, nine and ten in block fifty, city of England, Arkansas. The $10,000 contributed by the citizens of England, together with the proceeds of the sale of lots four and five, in block forty-nine, shall be used in the erection of a recreational building and equipments on lots seven, eight, nine and ten, in block fifty, city of England. In any event, the $10,000 shall be used in the erection of a recreational building, and if lots four and five, in block forty-nine, are not sold by the time the building is completed, then the trustees shall deed and convey these lots, as well as lots seven, eight, nine and ten, in block fifty, to said recreational association. If the citizens of England fail, within one year from the date of my death, to raise and contribute the $10,000 required of them, then I direct that my trustees sell all the property named in this item, and if the citizens of Lonoke, Arkansas, shall, within six months after said year, or within a period of eighteen months after my death, raise $10,000 and deposit same with my trustees for the erection of a recreational building in Lonoke, Arkansas, then my trustees shall use the proceeds from the sale of said property, together with the $10,000, in the erection of a recreational building in the town of Lonoke, Arkansas, for the benefit of Christian young men and women of the town of Lonoke, with the same purpose and object as provided if erected in England.''

According to appellants, the question to be determined is ''whether the testator intended to confine the location of the building to one of the pieces of property devised in said section 13, or whether he intended to create a trust fund to be matched by a fund of $10,000 to be raised by the citizens of England, to erect and maintain said building, and to leave the location of said

building in question to the citizenship of England, as expressed by the plaintiff association, and where it would be more serviceable to the entire citizenship of the city of England.''

It is a universal rule in the construction of wills to ascertain and determine the intention the testator had in mind from the language used in the will, giving consideration to the entire instrument, and to give effect to that intention, if not against some rule of law. In the recent case of *Hurst* v. *Hinderbrandt, ante,* p. 337, we said: ''It is a fundamental rule of construction of both deeds and wills to ascertain the intention the grantor had in mind, as to the course he desired his property to take, from the language used in the instrument, and to give effect to such intention, if it may be done without doing violence to the law.'' We there quoted from *Booe* v. *Vinson,* 104 Ark. 439, 149 S. W. 524, as follows: ''The purpose of construction of a will is to ascertain the intention of the testator from the language used, as it appears from the consideration of the entire instrument, and, when such intention is ascertained, it must prevail, if not contrary to some rule of law, the court placing itself as near as may be in the position of the testator when making the will.''

Bearing this well-established rule in mind, we must look to the will to determine the intention of the testator. In one clause or sentence of the above section of the will he said: ''If my trustees deem best they are hereby empowered to sell lots four and five, in block forty-nine, city of England, Arkansas, and shall erect the recreational building on lots seven, eight, nine and ten, in block fifty, city of England, Arkansas. The $10,000 contributed by the citizens of England, together with the proceeds of the sale of lots four and five, in block forty-nine, shall be used in the erection of a recreational building and equipment on lots seven, eight, nine and ten, in block fifty, city of England.''

The testator then provided that, if lots four and five in block forty-nine had not been sold by the time the

building is completed, then at that time his trustees were required to deed all the property to the recreational association. The trustees were empowered to convey this property to the association only when the building had been completed on the lots named. We do not think there is any room for construction, or reason to doubt the intention of the testator. He intended exactly what he said in the will, that is, that the recreational building should be erected upon the lots named, in any event, on lots seven, eight, nine and ten, block fifty. The trustees were empowered to sell lots four and five, in block forty-nine, and to use the proceeds in the erection and equipment of the building on lots seven, eight, nine and ten, in block fifty. He gave no authority in his will to sell lots seven, eight, nine and ten at all, but only to convey them to the recreational association after the building had been completed thereon. Not having given his trustees any general power to sell lots seven, eight, nine and ten, and use the proceeds in the erection of a building in another location, they had no such power. The *cy pres* doctrine, or the doctrine of approximation, has no application in this case, as there can be no reason for the application of the doctrine of *cy pres* until it is shown conclusively that the will or wish of the testator cannot be given effect. It is the duty of the court to construe the will in the light of the intention of the testator as gathered from the will, but the court is not permitted to substitute its judgment for the judgment of the testator, because the court may think that a better location for the building may be found.

In 5 R. C. L., page 365, § 105, it is said:

"The *cy pres* doctrine can properly be applied only where it is or has become impossible beneficially to apply the property left by the founder or donor in the exact way in which he has dictated it to be applied, and it can only be applied beneficially to similar purposes by different means. And there can be no question of *cy pres* until it is clearly established that the directions of the testator cannot be carried into effect. Therefore a court of equity is not entitled to substitute a different scheme

for the scheme which the donor has prescribed in the instrument which creates the charity, merely because a coldly wise intelligence, impervious to the special predilections which inspired his liberality, and untrammeled by his directions, would have dictated a different use of his money. Of course the doctrine of *cy pres* can have no existence when the donor himself provides for the application of the fund in the event of the failure of the charitable use to which he, in the first instance, directed that it should be devoted." See also *McCarroll* v. *I. O. O. F. of Ark.*, 154 Ark. 376, 243 S. W. 870.

It is agreed in the statement of facts that no conditions have arisen since the death of the testator that would render the site selected and designated by him less desirable or less adapted for the purposes specified. In other words, the site designated by the testator for the erection of the building is just as suitable now for the purpose designated by him as it was when the will was written.

A court of chancery would therefore have no power to select a new location *cy pres*. The decree of the chancery court dismissing the complaint for want of equity was correct, and it is in all things affirmed.