**CONNECTICUT COLLEGE, Appellant**

v.

**UNITED STATES of America, Appellee.**

**No. 15023.**

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 19, 1959.

Decided March 10, 1960.

Mr. Francis F. McGuire, New London, Conn., of the bar of the Supreme Court of Connecticut, pro hac vice, by special leave of Court, with whom Messrs. Benjamin H. Dorsey, Washington, D. C., and John L. Calvocoressi, Hartford, Conn., were on the brief for appellant.

Mr. Walter J. Bonner, Asst. U. S. Atty., at time of argument, with whom Messrs. Oliver Gasch, U. S. Atty., and Carl W. Belcher, Asst. U. S. Atty., were on the brief, for appellees.

Before WILBUR K. MILLER, FAHY and BURGER, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

Mary Williams Crozier, a resident of the District of Columbia, died August 2, 1955. Her last will and testament, which she had executed May 10, 1948,[1] was admitted to probate October 19, 1955. Among its provisions are the following:

> "Second. I give and bequeath to the United States of America the sum of Three Hundred Thousand Dollars ($300,000) upon condition that within five years after the date of my death the United States will authorize to be built and will build on the West Point Military Reservation at West Point in the State of New York, on a site south of Fort Clinton and north of the Bachelor Officers' Quarters on the general level of the Plain, in accordance with plans and specifications to be approved by the Superintendent of the United States Military Academy, after consultation with Major General Frank R. McCoy and Colonel James L. Walsh, if they shall be available for such consultation, and at a cost of not less than the amount of this bequest, a memorial building or hall to be designed primarily

1. There was a codicil dated May 5, 1954, with which we are not concerned.

for use as a meeting place and lodging for graduates of the United States Military Academy and their male guests when visiting West Point and to be called 'Crozier Hall' in memory of my late husband, Major General William Crozier, United States Army, who was a member of the Class of 1876 and who was Chief of Ordnance from 1901 to 1918.

\* \* \* \* \* \*

"Twelfth. All the rest residue and remainder of my property and estate, both real, personal and mixed, of whatever kind and wheresoever situate, of which I may die seized and possessed or to which I may be in any manner justly entitled at the time of my death, or over which I may have any dispository power whatever, I give, devise and bequeath, absolutely and in fee simple, according to the nature of the property, to Connecticut College, New London, Connecticut, to be used to erect a dormitory or other building for the use of the College in the memory of my father, Charles Augustus Williams."

On July 18, 1958,—almost three years after Mrs. Crozier's death—the United States of America filed suit in the United States District Court for the District of Columbia against The Riggs National Bank, which had qualified and was acting as executor, and against Connecticut College, for a construction of the will. The United States alleged, *inter alia*, in its complaint:

"From time to time since the probate of this Will the plaintiff, United States of America, has considered ways and means of carrying out the purpose and intent of testatrix to provide a memorial building or hall primarily designed for use as a meeting place and lodging for graduates of the United States Military Academy to be called Crozier Hall, as expressed in aforesaid paragraph second of testatrix's Will. However, it has been determined that the site named in the Will is not available and that the bequest is insufficient for the construction of a separate building of the type contemplated."

The Government also averred

" \* \* \* that in order to fulfill the dominant purpose of this purely charitable bequest the said testatrix's Will should be construed to permit the plaintiff to use the funds so bequeathed for a purpose similar to that contemplated by the testatrix in accordance with plans and specifications to be approved by the Superintendent of the United States Military Academy."

The prayer was

" \* \* \* that the Court direct the defendant Executor to pay over the proceeds of this bequest to the United States of America to be used for such charitable purpose as most closely approximates that contemplated by the testatrix, which purpose shall be determined pursuant to the direction of this Court, and for such other and further relief as may be required."

Connecticut College answered and by way of counterclaim alleged that, because the site is not available and the bequest is insufficient for the construction of a separate building of the type contemplated, the condition precedent in Article Second of the will "has not [been] and will not be met, and therefore the gift has failed." The counterclaim described the College as

" \* \* \* a charitable corporation specially chartered by the General Assembly of the State of Connecticut for the sole and exclusive purpose of maintaining an institution for the higher education of women; and all of its funds and property are, and by law must be, devoted solely, entirely and exclusively to the carrying out of said purpose."

Finally, the College alleged:

"The Testatrix did not have a general intention to devote the bequest made to the United States to any purpose other than that partic-

ularly set out in Article 'Second' of her will, and because it is impossible to carry out that particular purpose, the gift has failed."

It prayed that the bequest contained in Article Second be paid to Connecticut College.

The United States moved for summary judgment and attached to its motion an affidavit dated September 18, 1958, executed by Lieutenant General Garrison H. Davidson, then Superintendent of the United States Military Academy, and an affidavit dated October 10, 1958, executed by General Maxwell D. Taylor, then Chief of Staff, who had been Superintendent of the Military Academy from September 5, 1945, to January 28, 1949.

Although these affidavits were largely recitals of hearsay and personal opinion, and to that extent failed to support the Government's motion for summary judgment, they did contain certain material appropriate for consideration in connection with the motion. We summarize some of that material.

General Davidson stated the site for the Crozier Memorial building designated in Mrs. Crozier's will is in the Fort Clinton area, which "is substantially an extension of the Academy buildings in existence in 1948, the date of the will, *and also at the present time*; thus such appears to be a logical location for the building as of that time, to conform with the purposes set forth by the testatrix." (Emphasis supplied.) This was, first, a statement of fact, and, second, the General's opinion deduced therefrom. If his opinion was germane at all, it tended not to support but to defeat the Government's motion for summary judgment. For, General Davidson said that, not only as of the date of the will *but also*

*as of September 18, 1958,* the site designated in the will appeared to be a logical location for the building contemplated by Mrs. Crozier.[2] General Davidson's affidavit continued:

"The future planning and the contemplated expansion program of the Military Academy require that the Fort Clinton area be reserved for expansion purposes, that is, for academic buildings or dormitories. \* \* \* Thus, it is necessary at the present time to declare the Fort Clinton area as unavailable for the construction of a building as contemplated by the testatrix. \* \*"

The affidavit of General Taylor contains the following relevant material:

"In view of the interest expressed by Colonel Walsh and Mrs. Crozier in this site, I discussed the matter with a very restricted group in the Academy Headquarters to include General Stamps, who was a member of the faculty and of the Post Planning Board. As the long-range expansion plans for the Academy at that time included no specific use for this area, it was agreed to earmark it for use in connection with the Crozier memorial."

Connecticut College also moved for summary judgment and filed affidavits in support of its motion. One affiant stated:

"I have visited the said Military Academy on numerous occasions between 1946 and 1958, and do not recall any permanent structures on the area south of Fort Clinton and north of the Bachelor Officers' Quarters."

This statement was not controverted. Another affidavit, reproduced in the margin,[3] gave information concerning Con-

---

2. This statement, which militates against the Government's position, was probably made inadvertently by the affiant; but it appears to be a correct statement.

3. "I, Allen B. Lambdin, being duly sworn depose and say:

"1. I am the Business Manager of Connecticut College and have held that office since 1921.

"2. Connecticut College, located in New London, Connecticut, is an endowed institution specially chartered by the State of Connecticut for the higher education of women.

"3. I was acquainted with Mary Williams Crozier during her lifetime, and I am familiar with her family background. She had a great interest in New London

necticut College and the reasons for Mrs. Crozier's deep interest in that institution.

 Holding that the United States proposed substantial compliance with the bequest, and that the case was a proper one for the application of the *cy pres* doctrine,[4] the trial judge awarded summary judgment to the Government "with the proviso that the plan must be carried into full execution within the five-year period prescribed in the will." The judge's opinion added, "[T]he Court must insist that the Government carry out the terms of the will within the five-year period prescribed."

Accordingly an order was entered January 2, 1959, denying Connecticut College's motion for summary judgment, dismissing the counterclaim, and permitting the use of the bequest of $300,000 "for the construction of a building at either of the sites indicated by the Government as an attachment or wing or hall to a building to be constructed." It was "Further Ordered that the plan be carried into execution within the five (5) year period prescribed in the will." So, the District Court not only permitted the site to be changed from that designated by the testatrix, but also authorized the use of the bequest for the construction of a wing to another proposed building, instead of for the construction of the separate building contemplated by the will. Connecticut College appeals.

 It is generally held that a charitable trust may be created by an instrument which does not contain words of trust.[5] Accordingly, although Article Second of Mrs. Crozier's will contains no such words, it may nevertheless be said to make the United States the trustee of a charitable trust for the use and benefit of "graduates of the United States Military Academy and their male guests when visiting West Point,"—but only if its language indicates a charitable purpose on the part of the testatrix. It may be doubted whether graduates of the Academy and their guests constitute such a class as to make a bequest for their use and benefit charitable in nature. On the other hand, the use of the word "primarily" in the testamentary phrase "a memorial building or hall to be designed *primarily* as a meeting place and lodging for graduates * * *" indicates use of the building was not to be restricted to graduates and guests, but that additional groups might be permitted to enjoy

and Connecticut College and wanted to establish a memorial for her father, Charles Augustus Williams.

"4. Mary Williams Crozier was a native of New London and her family had been prominent in New London business and governmental life since prior to the American Revolution.

"5. Mrs. Crozier's estate came to her from her father who acquired his property while engaged in business in New London.

"6. Charles Augustus Williams was a benefactor of New London and gave to the City substantial gifts for public purposes, including a public park which is known as Williams Memorial Park.

"7. Connecticut College, in addition to its work in higher education, is the administrator of an endowed secondary school for girls known as Williams Memorial Institute which was established in 1881 and named after an uncle of Mrs. Crozier. This school is situated on the campus of Connecticut College.

"8. The estate of Mrs. Crozier was inventoried in the Probate Court for the

District of Columbia at a total value of $1,622,829.38. The amount received by and payable to Connecticut College as the residuary beneficiary of Mrs. Crozier's will is $1,231,390.84."

4. Literally, "as near to." Where there is a general charitable purpose, but literal compliance with the terms of the trust has become impossible or impracticable, the court will apply the *cy pres* doctrine by directing that the trust be administered as nearly as possible in conformity with the intention of the donor or testator.

5. In 4 Scott, Trusts § 351, it is said: "A charitable trust, like an express private trust, is created only if the settlor properly manifests an intention to create it. The settlor need not, however, use any particular language in showing his intention to create a charitable trust; he need not use the word 'trust' or 'trustee.' * * * (Footnotes omitted.) See also Restatement, Trusts (2d) § 351 (1959).

it; from this, a secondary charitable purpose might be presumed.

In the view we take of the case, however, it is unnecessary to decide whether a charitable trust was in fact established by Article Second. For, even if it was, we are of the opinion that the *cy pres* doctrine was improperly applied in the circumstances shown.

Assuming for the discussion, without deciding, that Article Second of the will established a charitable trust, the question is whether the plan provided by the testatrix had become impossible or impracticable so as to justify the District Court's application of the *cy pres* doctrine to provide for a wing instead of a separate memorial building, and to authorize construction on a site other than that designated by the testatrix.

We first consider whether it had become impossible or impracticable for the United States to build the separate structure called for by the will. That Mrs. Crozier contemplated a separate building and not a wing to another building seems beyond question. The language in Article Second of her will was quite specific,—"a memorial building or hall"— and the affidavits of Generals Davidson and Taylor indicate they knew she contemplated a separate building. Moreover, the very fact that the complaint asked the court to allow construction of a wing instead of a separate building shows the United States construed the will as requiring a separate structure.

No reason was given by the District Court for holding the sum of $300,000 provided in Article Second "may be used for the construction of a building * * as an attachment or wing or hall to a building to be constructed," when the will requires it to be used for a separate structure. Nor does any indication of a reason appear in the affidavits filed with the Government's motion for summary judgment, except perhaps the statement by General Taylor that, before Mrs. Crozier's death, he and "a restricted number of senior officers in my headquarters * * * were aware of the fact that the $300,000.00 in Mrs. Crozier's will would *probably* have to be augmented to provide a building to conform to the type of construction of the other buildings on the 'level of the Plain,' with the necessary interior furnishings and outside landscaping." (Emphasis supplied.)

The Government alleged in its complaint, presumably on the basis of information such as that quoted above from General Taylor's affidavit, "that the bequest is insufficient for the construction of a separate building of the type contemplated." It thus appears that the only reason for authorizing the use of the bequeathed money for an attachment or wing to, or a hall within, a proposed building,[6] instead of for the separate building envisaged by the testatrix, was that the sum of $300,000 "would probably have to be augmented" to provide a separate building.

The probable insufficiency of the bequest for the construction of a separate building does not, in the circumstances here, justify the authorization of its use for constructing an attachment or wing to a different building; for Mrs. Crozier did not require, or even anticipate, that the total cost of the separate building provided for by her would be covered by her bequest. She stipulated that the building cost *not less* than $300,000, but by no means did she restrict its cost to that sum. Plainly she expected the United States to supplement her bequest should it be too small to construct the separate building she specified. This shows, we think, that she did not contemplate or anticipate that her money would be used for an attachment or wing to another building, should it be insufficient to defray the cost of a separate memorial.

In view of the clear intention on the part of the testatrix, the performance of her plan for a separate building has not become impossible or impracticable

6. General Davidson's affidavit calls the proposed main building a "cadet activities building."

merely because the bequest may not be large enough to cover the cost of the sort of building the Government would be willing to construct. Either impossibility or impracticability of literal compliance with the donor's plan is indispensably necessary if *cy pres* is to be applied. Accordingly, we hold the District Court erred in authorizing the bequest to be used for an attachment to or a wing on or a hall in a proposed Academy building, instead of for a separate memorial building provided for by the testatrix.

■ We next consider the propriety of the District Court's action in applying the *cy pres* doctrine by authorizing the United States to use the bequest in the construction of a building on a site other than that designated in the will. A provision of a charitable trust may be changed by a court of equity if its performance has become impossible or impracticable through changed conditions and circumstances over which the trustee and the beneficiary have no control. But the *cy pres* doctrine does not authorize or permit a court to vary the terms of a bequest and to that extent defeat the intention of the testator merely because the variation will meet the desire and suit the convenience of the trustee.

To that effect is Hicks Memorial Christian Ass'n v. Locke, 1929, 178 Ark. 892, 12 S.W.2d 866, a case in which the testator had devised real estate as the site for a public recreational building if the citizens would contribute $10,000 to the cost of the building. Certain persons offered the required sum upon condition that the building be erected on a different and more desirable site, although they admitted the loc: on specified in the will had not become less desirable or less adapted for the purpose than it had been when the will was executed. The Supreme Court of Arkansas said, 12 S.W. 2d at page 868:

"* * * [T]here can be no reason for the application of the doctrine of cy-pres until it is shown conclusively that the will or wish of the testator cannot be given effect. It is the duty of the court to construe the

will in the light of the intention of the testator as gathered from the will, but the court is not permitted to substitute its judgment for the judgment of the testator, because the court may think that a better location for the building may be found. In 5 R.C.L. p. 365, § 105, it is said: '* * * [T]here can be no question of cy-pres until it is clearly established that the directions of the testator cannot be carried into effect. Therefore a court of equity is not entitled to substitute a different scheme for the scheme which the donor has prescribed in the instrument which creates the charity, merely because a coldly wise intelligence, impervious to the special predilections which inspired his liberality, and untrammeled by his directions, would have dictated a different use of his money. * * *'"

■ Nor may a trustee by his own act produce changed conditions which frustrate the donor's intention and still claim the gift through the application of the *cy pres* doctrine. This principle with respect to a gift upon condition precedent is stated in In re Costalo's Will, 1938, 167 Misc. 755, 4 N.Y.S.2d 665, 667:

" 'Where a literal compliance with the condition has become impossible *by reason of circumstances over which the devisee or legatee had no control, and through no fault on his part,* he is held to be entitled to take the gift,—the condition imposed by the testator being deemed to be satisfied by performance as nearly as possible, or *cy pres.* * * *' 2 Davids—New York Law of Wills, § 883, pages 1427 and 1428; Burns v. Clark, 37 Barb. 496." (Emphasis supplied.)

■ That a trustee will not be permitted to invoke the *cy pres* doctrine when his own deliberate act has prevented the fulfillment of the trustor's purpose was also held in President and Fellows of Harvard College v. Jewett, 6 Cir., 1925, 11 F.2d 119, 122. The court said:

"The cy pres doctrine can only be invoked in furtherance of the intent and purpose of the donor of the trust as near as may be, and not in disregard of the express terms of the grant or devise. Board of Education of Incorporated Village of Van Wert v. Inhabitants of Town of Van Wert, 18 Ohio St. 221, 227, 98 Am.Dec. 114. It does not appear from the record that, through any natural or unavoidable change in conditions or circumstances, the land devised is not now as fit and suitable for the preservation of these remains and relics as it was at the time this will was written, but rather that, by reason of the action of the trustee in removing these relics, its further use for the purpose of the trust has become unnecessary and impracticable. This presents no case for the application of the cy pres doctrine. Le Clercq v. Trustees of Town of Gallipolis, 7 Ohio (pt. 1) 218; Board of Education v. Town of Van Wert, supra."

The site for the memorial building in which Mrs. Crozier was interested and which she designated in her will was at first approved by the authorities at the Military Academy. General Taylor deposed that, at or about the time the will was executed, *in view of the interest expressed by Mrs. Crozier in the site she specified,* he discussed the matter with "a very restricted group in the Academy Headquarters," including a member of the Post Planning Board. "As the long-range expansion plans for the Academy at that time included no specific use for this area," the General's affidavit said, "it was agreed to earmark it for use in connection with the Crozier memorial."

But some time after Mrs. Crozier's death, the officers at West Point decided the site designated in the will should be reserved for another purpose: in September, 1958, General Davidson said in his affidavit, "The future planning and the contemplated expansion program of the Military Academy require that the Fort Clinton area be reserved for expansion purposes, that is, for academic buildings or dormitories * * *. Thus, it is necessary at the present time to declare the Fort Clinton area as unavailable for the construction of a building as contemplated by the testatrix."

Hence, although the site named in the will continued to be physically available in that there were no buildings on it, and, according to General Davidson, was still a "logical location for the building" for which it had been earmarked, it was *declared unavailable* for the location of the Crozier memorial by certain officers at the Military Academy because later planning was to reserve the Fort Clinton area for academic buildings or dormitories.[7]

Neither of the Government's affiants said it had become impossible or impracticable to use the site specified by Mrs. Crozier. They merely said the Military Academy authorities, who initially approved and earmarked the site chosen by the testatrix, had later declared it unavailable because they had changed their minds by 1958 and had decided to reserve the area for another purpose. And unavailability was declared, although the original site was still physically available and was still the "logical location" for the memorial.

Moreover, the affiants did not attribute unavailability to any change in conditions or circumstances other than the decision of the military to use the site for another purpose. Their decision was not said to have been dictated by the occurrence of events over which they had no control. It was due apparently to a voluntary change in policy, which may have been wise but is not shown to have been inevitable.

We are forced to conclude that the only change in circumstances or conditions which is said to make the Crozier site

---

7. There may be some reason why the Crozier memorial building could not be located among or near the contemplated "academic buildings or dormitories," but no reason is made to appear.

unavailable was the desire of the United States to use it for another purpose. The Government of course has the right, if it prefers, to reserve the location for other use, but it cannot for that reason reject Mrs. Crozier's physically available site and still be entitled to receive her bequest.

■ We hold the record falls far short of showing that, through changed conditions beyond the control of the United States, it has become impossible or impracticable to construct the Crozier memorial building on the site selected and specified by the testatrix. As we have said, it appears only that the Post Planners at West Point, who approved the site in 1948, preferred another in 1958, although the location specified in the will was still available. That being true, there was no justification for applying the *cy pres* doctrine and permitting the trustee of a charitable trust to depart from the settlor's direction merely because it suits its own convenience to do so. The District Court erred therefore in approving a site other than that designated in the will.

■ Connecticut College's counterclaim was correctly dismissed because the United States has not finally rejected Mrs. Crozier's bequest. Conceivably, the Government may yet seasonably and literally comply with the prescribed conditions. The Government will meet the testamentary conditions if it "will authorize to be built and will build," at a cost of not less than $300,000, a separate memorial building for the purpose and upon the site and within the time specified in the will. Whether the United States will or can do so remains to be seen, as the time for compliance with the conditions has not yet expired, no matter how it is calculated. We express no opinion as to when the five-year period will terminate, nor as to whether construction must be completed or merely begun within that time.

Upon remand, the summary judgment in favor of the United States will be set aside, and its complaint will be dismissed.

Reversed and remanded.

FAHY, Circuit Judge, dissents, being of the view that the District Court was authorized in the circumstances to apply the *cy pres* doctrine. The lapse of time due to litigation, however, would necessitate consideration of an extension of time.